[No. B193759. Second Dist., Div. Seven. Dec. 17, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY LEE JONES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 1. of the Discussion.

## COUNSEL

Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth N. Sokoler and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERLUSS, P. J.**—Tommy Lee Jones appeals from the judgment entered following his conviction by a jury on one count of second degree robbery (Pen. Code, § 211)[1] and one count of assault with a deadly weapon (§ 245, subd. (a)(1)). On the robbery count the jury also found true special allegations of personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1))

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

and personal infliction of great bodily injury (§ 12022.7, subd. (a)) and on the assault count the special allegation of personal infliction of great bodily injury. The trial court sentenced Jones to an aggregate state prison term of seven years: the middle term of three years on the robbery charge plus three years for the great bodily injury enhancement and one year for the deadly weapon enhancement on that count. The court stayed the sentence imposed on the aggravated assault conviction under section 654.

On appeal Jones contends the trial court committed prejudicial error by failing to exclude the victim's identification of him in a photographic lineup and improperly concluded it lacked discretion to consider striking the punishment for the deadly weapon enhancement. We affirm the trial court's evidentiary ruling. However, because the court incorrectly concluded imposition of the deadly weapon enhancement specified by section 12022, subdivision (b)(1), is mandatory, we reverse and remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert Brown, a homeless man living near an off-ramp of the Hollywood Freeway in Los Angeles, first noticed Jones when Jones and two other homeless men pitched a tent in a lot next to the off-ramp on the other side of the freeway. Brown, who had been living at his site for about six months, warned the three men that use of tents was illegal in Hollywood and would cause the police to roust them. Jones told Brown he would not move. A day or two later the police came and forced all of the men camped on the lot to move, after which Jones and his companions erected the tent on the lot occupied by Brown. Brown again confronted the men, including Jones, and warned them the tent would result in the police rousting not only them and their tent but also everyone else who lived there, including Brown. Again, the three men refused to remove the tent, and it was still there when Brown awoke the next morning.

Upset, but also hungry, Brown walked over to the adjacent off-ramp to panhandle. One of Jones's companions, whom Brown knew as Eric, approached the same off-ramp with a cup and a sign, which he set on the retaining wall. Brown told Eric once more they should move the tent because they had already lost their original site and were now jeopardizing Brown's location. The conversation became heated. Agitated, Brown knocked Eric's cup and sign off the retaining wall. Eric left the ramp and returned to the tent, and Jones walked over to Brown, who had resumed panhandling. Brown and Jones argued again about the tent; and Jones told Brown, "I'm not leaving.

You're the one that's leaving." Jones walked back to the tent and returned, this time holding something against his leg. Brown, who was panhandling, claimed he did not see Jones approach but turned when he felt a "prick" in his back to see Jones standing there with a knife in his hand. He then touched his back, saw his hand full of blood and realized Jones had stabbed him. Jones told him to pick up the cup Brown had knocked over. When Brown protested it was Eric's cup, Jones threatened to stab Brown in the neck. Frightened, Brown gave him the change he had collected. Jones then walked back toward the tent. Brown walked to a nearby gas station and called an ambulance, which transported him to a hospital where he was treated for a puncture wound approximately one inch in width.

Brown's version of events was largely corroborated by Roger Gomez, who sat in his car waiting for the light to change at the top of the off-ramp as the incident unfolded. Although Gomez was later unable to identify Jones in a photographic lineup, he described seeing a Black man (Jones is African-American) holding something by his side approach Brown, who is also African-American. Momentarily distracted, Gomez did not see Jones stab Brown but saw the two men arguing and Brown lifting his shirt to reveal blood. He then saw Jones walk away from Brown and throw something over the fence into an empty lot. When the light changed, Gomez continued through the intersection and left the area. A short while later, however, he returned to reenter the freeway and saw police officers searching the field. Gomez stopped and told them what he had seen, after which the officers found a knife with a blade approximately one inch across.

Los Angeles Police Officer Jaime Gonzalez, who responded to the scene and spoke with Brown, surmised the incident involved a "transient on transient" crime. Based on Brown's description of his attacker, Gonzalez speculated Brown had been stabbed by Jones, whom Gonzalez had ticketed the day before for panhandling in the street.[2] He provided the investigating detective with Jones's description. Several days later Brown was shown a group of six photographs (a photographic six-pack lineup) that included a photograph of Jones in the fifth position. Brown immediately identified Jones as his attacker. He also identified Jones as his attacker in court.

Before trial Jones's counsel moved to suppress Brown's identification of Jones in the photographic lineup. The court denied the motion. At trial Jones did not testify or call any witnesses in his own defense. The jury convicted Jones on both the robbery and assault counts and found true all special allegations.

---

[2] Gonzalez also identified Jones at trial as the man he had ticketed the day before the assault for panhandling in the roadway.

At the sentencing hearing the court indicated its intention to impose the middle term sentence of three years on the robbery count, plus a three-year enhancement for the great bodily injury allegation and a one-year enhancement for use of a deadly weapon. The court also indicated it would stay the sentence on the aggravated assault conviction under section 654. Jones's counsel then called as a witness a Salvation Army counselor who had been supervising Jones in a drug and alcohol abuse program for veterans since his incarceration. The counselor described Jones's commitment to changing his life, a message Jones echoed in his own statement to the court asking that he be given probation in order to proceed with the program. The court praised Jones's progress, but declined to order probation in light of Jones's five previous felony convictions. The court also denied Jones's request to stay or strike the deadly weapon enhancement, stating it lacked discretion to do so.

## CONTENTIONS

Jones contends the trial court erred in denying his motion to exclude Brown's identification of him in the photographic lineup on the ground the lineup was unduly suggestive and in concluding it lacked discretion to strike the punishment for the deadly weapon enhancement authorized by section 12022, subdivision (b)(1).

## DISCUSSION

1. *The Trial Court Did Not Err in Denying the Motion to Exclude Brown's Identification of Jones in the Photographic Lineup**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *The Trial Court Erred in Concluding It Lacked Discretion to Strike the Deadly Weapon Enhancement Under Section 12022, Subdivision (b)(1)*

    a. *Section 1385 and the court's discretion to strike the punishment for enhancements*

■ "It is well established that, as a general matter, a court has discretion under section 1385, subdivision (c),[4] to dismiss or strike an enhancement, or

---

*See footnote, *ante*, page 1373.

[4] Section 1385 provides, "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading. [¶] (b) This section does not authorize a judge to strike any prior

to 'strike the additional punishment for that enhancement in the furtherance of justice.' " (*People v. Meloney* (2003) 30 Cal.4th 1145, 1155 [135 Cal.Rptr.2d 602, 70 P.3d 1023] (*Meloney*).) The power to dismiss "an action" includes the discretion to "strike factual allegations relevant to sentencing" including allegations of prior convictions. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*).) Inherent in this legislative grant of judicial discretion is the recognition that " '[m]andatory, arbitrary or rigid sentencing procedures invariably lead to unjust results. Society receives maximum protection when the penalty, treatment or disposition of the offender is tailored to the individual case. Only the trial judge has the knowledge, ability and tools at hand to properly individualize the treatment of the offender,' " subject, of course, to legislative direction and appellate review. (*People v. Williams* (1981) 30 Cal.3d 470, 482 [179 Cal.Rptr. 443, 637 P.2d 1029], quoting *People v. Dorsey* (1972) 28 Cal.App.3d 15, 18 [104 Cal.Rptr. 326].)

█ The Legislature may eliminate this power; but, if it elects to do so, the abrogation of section 1385 must be effected in clear and unmistakable terms. (*People v. Williams, supra,* 30 Cal.3d at p. 482.) "[A]bsent a clear legislative direction to the contrary, a trial court retains its authority under section 1385 to strike an enhancement." (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) As the Supreme Court has cautioned, section 1385, which has been codified since the inception of our Penal Code, has long coexisted with statutes defining punishment and must be reconciled with them whenever possible. (*Romero, supra,* 13 Cal.4th at p. 518; *People v. Hatch* (2000) 22 Cal.4th 260, 267 [92 Cal.Rptr.2d 80, 991 P.2d 165].) Thus, the mandatory nature of sentencing provisions is, without more, insufficient to eliminate the trial court's discretionary power to dismiss under section 1385. (*Williams,* at p. 489; see also *People v. Wilson* (2002) 95 Cal.App.4th 198, 202 [115 Cal.Rptr.2d 355] ["[g]eneral mandatory language, such as 'shall' . . . is insufficient to support a finding of legislative intent to divest trial courts of discretion under Penal Code section 1385 to strike enhancements"].)

█ Further, absent any other indicia of legislative intent to eliminate the sentencing court's discretion under section 1385, courts construing the gen-

---

conviction of a serious felony for purposes of enhancement of a sentence under Section 667. [¶] (c) (1) If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a). [¶] (2) This subdivision does not authorize the court to strike the additional punishment for any enhancement that cannot be stricken or dismissed pursuant to subdivision (a)."

eral legislative direction "notwithstanding any other law" have held that language insufficient to make imposition of a sentencing enhancement mandatory. (*Romero, supra,* 13 Cal.4th at pp. 523–524.) "The legislative command that a statutory provision be applied 'notwithstanding any other law' most likely means that the provision, when applicable, 'takes the place of whatever law would otherwise determine defendant's sentence for the current offense.' [Citation.] When the Legislature intends to divest trial courts of authority to strike an enhancement, it does not rely on nonspecific language, such as 'notwithstanding any other provision of law' [citation], but rather expressly divests trial courts of authority to strike [the relevant enhancement]." (*People v. Wilson, supra,* 95 Cal.App.4th at p. 202.)[5]

    b.  *The trial court retains authority to strike deadly or dangerous weapon–use enhancements under section 12022, subdivision (b)*

Section 12022, subdivision (b)(1), provides: "Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." Section 12022, subdivisions (a) and (c), impose varying enhancements for felonies in which a defendant is found to have been armed with a firearm (subd. (a)(1)), an assault weapon, machine gun or a .50 BMG rifle (subd. (a)(2)) or a firearm in the commission of certain drug offenses (subd. (c)); and section 12022, subdivision (d),

---

[5] The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we review de novo. (*People v. Weaver* (2001) 26 Cal.4th 876, 918 [111 Cal.Rptr.2d 2, 29 P.3d 103]; *Thompson v. Keohane* (1995) 516 U.S. 99 [133 L.Ed.2d 383, 116 S.Ct. 457]; see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].)

To decide whether the discretion conferred by section 1385 embraces the deadly weapon-use enhancement set forth in section 12022, subdivision (b)(1), we are guided by the familiar principle that " '[t]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*People v. Thomas, supra,* 4 Cal.4th at p. 210, quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) " '[W]e begin by examining the language of the statute . . . [b]ut "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Thomas,* at p. 210.)

provides for a sentence enhancement if the defendant was an accomplice of someone armed with a firearm who committed one of the drug offenses listed in subdivision (c). Section 12022, subdivision (e), clarifies that enhancements imposed under section 12022 "shall count as one, single enhancement." Finally, section 12022, subdivision (f), provides, "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in subdivision (c) or (d) in an unusual case where the interests of justice would best be served," in effect paralleling the language of section 1385, subdivision (a).

The People argue section 12022, subdivision (f), by specifically affirming the trial court's authority to strike enhancements imposed under section 12022, subdivisions (c) and (d), while omitting any reference to section 12022, subdivision (b), confirms the Legislature's intention to restrict the operation of section 1385 to subdivisions (c) and (d) only. Although the People correctly observe "it is not necessary that the Legislature expressly refer to section 1385 in order to preclude its operation" (*People v. Thomas, supra,* 4 Cal.4th at p. 211), neither the permissive language of subdivision (f) nor the negative pregnant construction advanced by the People constitutes the clear indication of legislative intent required to deprive the trial court of the authority to strike a sentencing enhancement.

First, in light of the well-established case law referenced above that even mandatory language requiring imposition of a sentencing enhancement is insufficient, standing alone, to strip a court of its discretion to strike an enhancement, it is difficult to understand how, as a matter of both logic and statutory construction, language that simply confirms the court's authority to strike enhancements in particular situations could be an adequate basis on which to conclude the court has been deprived of its power to do so in other circumstances.

Second, the history of section 12022 and the circumstances under which subdivision (f) was added to the statute reinforce the conclusion the Legislature never intended to deprive a court of its inherent discretion under section 1385. What are now subdivisions (c), (d) and (f) of section 12022 were added in 1989 as part of an act establishing specific sentencing enhancements for use of firearms in certain drug offenses. (See Stats. 1988, ch. 1249, § 2, p. 4160.) At that time, and continuing through 1998, section 1170.1, subdivision (h), expressly authorized the trial court to strike section 12022 enhancements "if it determines that there are circumstances in mitigation of the

additional punishment":[6] "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in Sections 667.5, 667.8, 667.85, 12022, 12022.2, 12022.4, 12022.5, 12022.6, 12022.7, and 12022.9 if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment. . . ." (Stats. 1987, ch. 1423, § 3, p. 5258, italics added; see also Stats. 1988, ch. 1484, § 3, at p. 5251 [supplementing, effective Jan. 1, 1989—the same date that subds. (c), (d), and (f) became effective as part of § 12022—the list of enhancements set forth in former § 1170.1, subd. (h), and retaining § 12022 on that same list].) Thus, even if section 12022, subdivision (f), were arguably unnecessary in light of the express language of former section 1170.1, subdivision (h), the Legislature's addition of this subdivision can only be seen as confirmation of its intent to extend a court's preexisting authority to strike *any* section 12022 enhancement to the new enhancements added by the 1988 amendments. (See Legis. Counsel's Dig., Assem. Bill No. 3550 (1987–1988 Reg. Sess.) 4 Stats. 1988, Summary Dig., p. 417 [describing addition of subd. (f) as authorizing court "to strike the additional enhancement *which would be added by this bill* in an unusual case where the interests of justice would best be served" (italics added)]). Properly viewed in its historical context, there is no negative pregnant created by subdivision (f).

To be sure, section 1170.1 no longer contains express confirmation of the trial court's authority under section 1385 to strike section 12022 enhancements. But, as the Supreme Court explained in *Meloney, supra,* 30 Cal.4th 1145, in considering the court's authority to strike bail enhancements under section 12022.1, "The Legislature repealed this subdivision of the Penal Code effective January 1, 1998, stating at the time: 'In repealing subdivision (h) of Section 1170.1, which permitted the court to strike the punishment for certain listed enhancements, it is not the intent of the Legislature to alter the existing authority and discretion of the court to strike those enhancements or to strike the additional punishment for those enhancements pursuant to Section 1385, except insofar as that authority is limited by other provisions of the law.' (Stats. 1997, ch. 750, § 9.) From this history it is apparent that the Legislature views sentence enhancements under section 12022.1 as being subject to a trial court's discretion to strike pursuant to section 1385." (*Meloney,* at p. 1156.) That is, the repeal of section 1170.1, subdivision (h), left in place the trial court's existing discretion to strike all of the enhancements listed in

---

[6] The Supreme Court in *People v. Thomas, supra,* 4 Cal.4th at page 211, held there was no difference between section 1385's "in furtherance of justice" standard for striking the punishment for an enhancement and the standard contained in former section 1170.1, subdivision (h).

former section 1170.1, subdivision (h), including section 12022, except to the extent the Legislature imposed any additional limitations on that authority. Because section 12022, subdivision (f), predated the repeal of former section 1170.1, subdivision (h), and the Legislature has not acted in any other way to restrict the application of section 1385 to section 12022, subdivision (f) does not limit the court's preexisting authority under section 1385. (Cf. *People v. Thomas, supra,* 4 Cal.4th 206 [holding 1989 legislation deleting § 12022.5 from list of strikable enhancements in former § 1170.1, subd. (h) eliminated court's discretion under § 1385].)

Finally, our conclusion a court retains discretion to strike section 12022, subdivision (b), enhancements is fully supported by the Legislature's express reference to section 1385 in several other provisions of the Dangerous Weapons Control Law (§ 12000 et seq.), which unequivocally eliminated equivalent discretion. For instance, subdivision (c) of section 12022.5, which imposes sentence enhancements for personal use of firearms, expressly states "[n]otwithstanding Section 1385 or any other provisions of law, the court *shall not strike* an allegation under this section . . . ." (Italics added.) The same is true of subdivision (h), of section 12022.53 (imposing enhancements for use of a firearm in the commission of certain enumerated felonies), which states "[n]otwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section . . . ." Indeed, section 1385 itself expressly restricts a court's authority "to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667." (§ 1385, subd. (b); see also § 1385.1 ["[n]otwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance . . . admitted by a plea of guilty or nolo contendere or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive"].)

In sum, nothing in the language or history of section 12022, subdivision (f), reflects the "clear and unmistakable" intent required to restrict the authority of the trial court to consider, in its discretion, striking the one-year deadly weapon-use enhancement imposed under section 12022, subdivision (b)(1). Because Jones was entitled to a sentencing decision made in the exercise of the "informed discretion" of the court (see *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686]), and the court in this case was mistaken as to the scope of its discretionary powers, a remand for resentencing is appropriate. (*Meloney, supra,* 30 Cal.4th at p. 1165; *Romero, supra,* 13 Cal.4th at p. 530, fn. 13 [remand required when record discloses court misunderstood scope of its discretion to dismiss prior strike conviction].)

## DISPOSITION

The cause is remanded for resentencing to allow the superior court to consider whether the enhancement imposed under section 12022, subdivision (b)(1), should be stricken under section 1385. In all other respects, the judgment is affirmed.

Woods, J., and Zelon, J., concurred.