Filed 8/14/14  P. v. Alcalde CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CALEB J. ALCALDE,<br><br>      Defendant and Appellant. | B252111<br><br>(Los Angeles County<br>Super. Ct. No. YA085595) |

        APPEAL from a judgment of the Superior Court of Los Angeles County. Mark S. Arnold, Judge.  Affirmed.

        Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

————————————————

Defendant Caleb J. Alcalde appeals from the judgment entered following a jury trial that resulted in his conviction of assault by means likely to produce great bodily injury (GBI), and a related enhancement. Based on our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441 (*Wende*), we affirm both the conviction and the enhancement.

## FACTS

### A. *The People's Case*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358 (*Zamudio*)), the evidence established that in December 2011, defendant lived with his father, David Alcalde (Alcalde Sr.), on the 1600 block of Crenshaw Boulevard, in Torrance. At the time, Javier Vicencio was the general manager and partial owner of a gas station and mini market located two doors south of the Alcalde home, on the corner of Crenshaw and Carson Boulevards. Sometime prior to December 7, 2011, a business dispute caused Vicencio to forbid defendant from being on the gas station premises. Assault victim Brian Willett had worked at the gas station since 2007. Over the years, Willett had become friendly with Alcalde Sr., who was a frequent customer at the gas station. Willett knew defendant as both a customer and as Alcalde Sr.'s son. He knew that defendant was not allowed on the premises.

Willett was on duty the evening of December 7, 2011. At about 6:10 p.m., Willett and Alcalde Sr. were sitting on the tailgate of Willett's truck, which was parked in view of the gas pumps and store, smoking and talking. When defendant got off the bus at a little after 6:00 p.m., Alcalde Sr. waved him over and they included him in the conversation. During discussion of the aforementioned business dispute, Willett said jokingly to defendant something like, "Suck my dick, asshole" and either "I'll kick your ass" or "I could kick your ass." Alcalde Sr. laughed—it was not unusual for the friends to use coarse language. After a while, Willett put his cigarette down on the tailgate and went inside to help a customer. When Willett returned, he picked up his cigarette and sat back down on the tailgate. Willett noticed that defendant's demeanor had changed since

2

Willett had gone into the store. Defendant said to Willett, "You should watch how you talk to people" and "Don't tell me to suck your dick." Willett took a few steps toward defendant, stopping about three of four feet away, and said, "You need to go, dude. My boss is right. You do need to leave." Defendant said, "Okay. I warned you," and then punched Willett in the chin. Defendant followed up with several more punches to Willett's face and when Willett fell to the ground, defendant kicked him in the head and face a few times. Willett heard Alcalde Sr. yelling, "Stop" and "That's enough. That's enough." While defendant was beating Willett, Alcalde Sr. tried to get between defendant and Willett to protect Willett. When defendant tried to kick Willett again, Willett grabbed defendant's foot, which ended the fight. Willett got up off the ground and went into the store. Alcalde Sr. followed Willett into the store and was there when Willett called the police. A tape recording of Willett's 911 call was played for the jury. By the time the police arrived two minutes later, Alcalde Sr. and defendant were gone. After Willett closed the gas station that night, he went to the hospital where he received 16 stitches for a cut on his lip. Willett also had a black eye and some bruises on his back and arm. Travis Brandt, who did not know defendant or Willett, was pumping gas when he became aware of a commotion in front of the store. Brandt saw defendant punching Willett in the face; Willett had his hands up trying to block the punches. As Brandt walked towards them with the intention of breaking up the fight, his view was momentarily obstructed by a planter. When Brandt got a little closer, he saw Willett on the ground and defendant kicking him repeatedly in the head and upper body. Brandt next saw a third man (presumably Alcalde Sr.) get in between defendant and Willett, apparently trying to shield Willett. Alcalde Sr. put his hands on Willett's shoulders and said, "It's not worth it. It's not worth it." Defendant made eye contact with Brandt, then picked up a large backpack and walked north (toward the Alcalde home). Willett got up and walked into the store. Alcalde Sr. walked around in circles a few times and then said to Brandt, "You can't go around telling someone to suck your cock." Brandt responded, "That doesn't mean you can beat the shit out of them in the street."

3

Torrance police officer Joseph Craft testified that when he arrived at the gas station at about 6:20 p.m., the side of Willett's face was red and swollen and he had a laceration on his chin.

## B. *The Defense Case*

Although Alcalde Sr.'s testimony was similar to Willett's, the former's version of events supported defendant's self-defense claim. Alcalde Sr. recalled that Willett did not seem his ordinary self even before defendant arrived. For example, while they were sitting on the tailgate and smoking, Willett said to Alcalde Sr., "What the fuck are we doing, Dave?" When defendant got off the school bus at about 6:15 p.m., he walked over and said hello. Appearing annoyed that he had to go help a customer in the store, Willett flicked his cigarette at defendant, hitting him in the chest, and said, "Oh, you think you're a bad ass? I'll kick your ass" and "suck my dick." When Willett came out of the store a few minutes later, he was "shadow boxing" and yelling at defendant, "You still here? I told you to fuck out. I'll kick your ass. I told you to suck my dick and eat my cum." Alcalde Sr. was shocked because he and Willett never cursed or joked around with one another. Willett then walked towards defendant in "in a vigorous manner. Really tense shoulders." When defendant told Willett not to speak to him that way, Willett responded, "I can talk to you any fucking way I want to. It's my fucking store." Willett threw a right cross at defendant, which defendant blocked. But, Willett lost his balance and fell onto defendant, causing defendant to fall onto the ground with Willett on top of him. Defendant tried to get away, but Willett grabbed onto his leg and would not let go. Getting in between defendant and Willett, Alcalde Sr. loosened Willett's grip on defendant's leg and told Willett "It's not worth it." After Willett got up and walked into the store, Alcalde Sr. told defendant to go home. When Alcalde Sr. talked to a police detective on the phone nine months later, he told her that defendant was "provoked." Although he did not tell the detective that Willett was the aggressor or that Willett threw the first punch, that was what he meant by "provoked." A recording of Alcalde Sr.'s

4

phone interview was played for the jury. Alcalde Sr. never apologized to Willett; in fact, it was Willett who apologized to Alcalde Sr.

Detective Douglas Hath interviewed Willett a few days after the incident. Willett told Detective Hath that while he was on the ground and defendant was kicking him, he managed to hook defendant's leg and bring him to the ground. After Willett got up and announced that he was going to call the police, defendant left.

Detective Rosemary Herrera interviewed Willett in August 2012. Willett said "all of them were talking more shit saying suck my dick, you suck my dick. [¶] He said all three of them were saying this to include [defendant] and [Alcalde Sr.]." Willett said it "was all in play and not directed to anyone." Willett told Detective Herrera he went into the store twice to help customers and the attack occurred after he came out of the store the second time.

## PROCEDURAL BACKGROUND

Defendant was charged with assault by means likely to produce GBI. (Pen. Code, § 245, subd. (a)(4).)[1] A GBI enhancement was also alleged. (§ 12022.7, subd. (a).) A jury convicted defendant as charged and found true the enhancement. Defendant's motion to strike the GBI enhancement was denied. Defendant was sentenced to five years in prison, comprised of the two-year low term on the substantive charge plus three years for the enhancement. Defendant timely appealed.

We appointed counsel to represent defendant on appeal. After examination of the record, appointed counsel filed an opening brief which contained an acknowledgment that she had been unable to find any arguable issues and requesting that we independently review the record pursuant to *Wende, supra*, 25 Cal.3d 436. We advised defendant that he had 30 days within which to personally submit any contentions or issues which he wished us to consider.

---

[1]     All statutory references are to the Penal Code.

5

On March 21, 2014, defendant submitted a letter brief in which he raised four contentions: (1) he acted in self-defense; (2) there was no evidence he used a deadly weapon; (3) the GBI enhancement should have been dismissed; and (4) trial counsel was ineffective. As we shall explain, none of the contentions raises colorable issues on appeal.

Defendant's first contention is a challenge to the sufficiency of the evidence that he did not act in self-defense. (See *People v. Saavedra* (2007) 156 Cal.App.4th 561, 571 [prosecution has burden to prove defendant did not act in self-defense].) But Willett's description of the assault constitutes substantial evidence that defendant was not acting in self-defense. (*People v. Chavez* (1968) 268 Cal.App.2d 381, 384 [testimony of the victim of an assault is sufficient to support a conviction].) This is so notwithstanding Alcalde Sr.'s conflicting evidence. (See *Zamudio, supra*, 43 Cal.4th at p. 357 [conflicts in the evidence do not justify reversal].) The appellate court may not reweigh the evidence or reconsider the credibility of the witnesses. That is a function for the jury. (*Ibid.*)

Defendant challenges the sufficiency of the evidence as to whether he committed an assault with a deadly weapon (ADW) or an assault by means likely to produce GBI. First of all, we appreciate some of the confusion defendant expresses about his belief that he may have been improperly convicted for ADW. The uncertainty may be due to the change in the statutory subdivisions of the law of ADW and GBI. Prior to January 1, 2012, both ADW and GBI were punishable by the same statute, section 245, subdivision (a)(1). (Stats. 2004, ch. 494, § 1.) As of January 1, 2012, the code section was amended so that ADW remained in subdivision (a)(1) but, GBI was moved to a new subdivision (a)(4). (Stats. 2011, ch. 183, § 1.)

By the time defendant was charged by information on March 22, 2013, the new code subdivision was in effect.[2] Nevertheless, the People, perhaps mindful of the

---

[2] Defendant was arrested on December 20, 2011, and originally charged with simple assault. On June 25, 2012, the People dismissed the charges pursuant to section 1385, and then re-filed.

December 7, 2011 date of the actual offense, charged defendant under subdivision (a)(1) as it existed on that date, but the information expressly identified the GBI portion of former section 245, subdivision (a)(1). Count 1 of the information reads: "On or about December 7, 2011, in the County of Los Angeles, the crime of ASSAULT BY MEANS LIKELY TO PRODUCE GREAT BODILY INJURY, in violation of PENAL CODE SECTION 245(a)(1) . . . ." The jury was also instructed with CALCRIM No. 875, which states that defendant was "charged in Count 1 with force likely to produce great bodily injury in violation of Penal Code section 245." The same language is found in the verdict form signed by the foreperson.

As to the sufficiency of the evidence of GBI, the evidence was that Willett received 16 stitches to close his lacerated lip. A jury could reasonably find that Willett suffered GBI. (See *People v. Clay* (1984) 153 Cal.App.3d 433, 459-460 [evidence that wounds required stitches supported finding of "great bodily injury"].)

Defendant's third contention has three elements. The first, a challenge to the adequacy of the jury instructions describing assault, is without merit; we have reviewed those instructions and find them to have been both legally correct and adequate. The second element deals with defendant's allegation that, at a juror's request, the court gave the jury defendant's "entire file." We are not sure what "entire file" means, but to address this contention would require us to consider matters outside the record; as such, it is more appropriately addressed by means of a petition for habeas corpus. (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 543 (*Polanski*).) The third element contends the trial court incorrectly believed it had no discretion to strike the GBI enhancement. On this subject, the trial court stated: "Regarding your request for me to strike the great bodily injury enhancement, there's no legal authority for that. I can't just dismiss it under Penal Code section 1385. I'm not inclined to do that, but were inclined to do that, it would be reversed on appeal." Although the trial court incorrectly believed it was without discretion to strike the enhancement under section 1385 (see *People v. Jones* (2007) 157 Cal.App.4th 1373, 1278-1379), the error is harmless since its statement

7

makes clear that it would not have dismissed the enhancement even if it understood it had the power to do so.

Defendant's fourth contention, that he received ineffective assistance of counsel, is also more properly addressed by means of a petition for habeas corpus. (*Polanski, supra*, 180 Cal.App.4th at p. 543.)

We have examined the entire record and are satisfied that appointed counsel fully complied with her responsibilities and that no arguable issues exist. (*Wende, supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.