Filed 10/29/20  P. v. Moss CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072267 |
| v. | (Super.Ct.No. BAF1800564) |
| NICHOLAS RICHIE WAYNE MOSS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge.  Affirmed as modified.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison V. Acosta and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Nicholas Richie Wayne Moss approached Henry S.[1] and Mary M. at their apartment complex while they were waiting outside for a friend. Defendant asked to speak with Henry and they walked together toward the carports at the apartment complex. Defendant fell behind and then reached around Henry, stabbing him in the abdomen. Defendant lifted his arm to strike again and Henry put up his hands to defend himself. Henry was cut across both hands. Henry had to be treated for laceration of his liver and had permanent damage to one of his fingers.

Defendant was convicted of assault with a deadly weapon and he was found to have suffered prior convictions.

Defendant claims on appeal that (1) the trial court erred by refusing to grant a continuance so that he could file a *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) motion to dismiss his prior convictions; (2) his one-year sentence enhancements imposed pursuant to Penal Code section 667.5, subdivision (b),[2] for having served prior prison terms must be stricken in accordance with Senate Bill No. 136; (3) the trial court erred by imposing the great bodily injury enhancement and prior serious felony enhancements concurrently rather than imposing or striking the enhancements; and (4) the fines and fees imposed by the trial court must be reversed because the trial court did not determine whether he had an ability to pay the fines or fees, in violation of his due process rights.

---

[1] We refer to the victim and his girlfriend by their first names to preserve their anonymity. (Cal. Rules of Court, rule 8.90(b).) No disrespect is intended.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

A.    PROCEDURAL HISTORY

Defendant represented himself at trial.  Defendant was found guilty of assault with a deadly weapon (§ 245, subd. (a)(1)) and the jury found true the enhancement that he caused great bodily injury (§ 12022.7, subd. (a)).  After waiving his right to a jury trial on the priors, in a bifurcated proceeding the trial court found that defendant had suffered two prior serious and/or violent felony convictions (§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(a)); two prior serious felony convictions (§ 667, subd. (a)); and served two prior prison terms (§ 667.5, subd. (b)).  Defendant was sentenced to a third-strike sentence of 25 years to life.[3]

B.    FACTUAL HISTORY

1.    *PEOPLE'S CASE IN CHIEF*

On August 26, 2018, at approximately 12:30 p.m., Henry was in front of an apartment complex in Hemet waiting for a friend to pick him up.  His girlfriend, Mary, was waiting with him.  They both were standing under a carport in the shade.  Mary had seen defendant around the apartment complex before that day but they were not friends.  Defendant was recognizable because of the tattoos on his face.  Henry observed defendant ride up on a bicycle and stop at a nearby pole.  He pulled out a knife and appeared to be sharpening it on the pole.

---

[3]  The trial court additionally imposed fines and fees, which will be discussed in more detail, *post*.

3

About 30 minutes later, defendant approached them on foot and asked if he could speak with Henry alone. Henry and defendant walked toward another carport. Initially, they walked side-by-side to the carport. Defendant fell behind Henry and put his arm around him. Defendant had a knife in his hand and stabbed Henry in the abdomen. Henry turned around to face defendant. Defendant then stabbed at him again. Henry put up his hands to defend himself and defendant cut him across both hands.

Henry tried to chase after defendant but was unable to catch him because Henry was losing a lot of blood. Mary did not see the stabbing because Henry and defendant had walked behind a car. She heard someone yell, "Cuz is tripping." She then saw Henry coming back to her and he was bleeding from his chest and hands. Defendant ran away. Henry was weak and fell down. Mary tried to stop the bleeding. A man at the apartment complex took them to the hospital.

Hemet Police Officer Brian Stehli responded to the apartment complex where he observed a pool of blood in the parking lot. Officer Stehli went to the hospital. Henry told Officer Stehli that the person who stabbed him had either 38 or 35 tattooed under his eye. Henry indicated the assailant was either Hispanic or Black. Officer Stehli had met defendant and knew that he had a distinctive tattoo of "3CE" on his face and that his brother lived in the apartment complex where the stabbing occurred. Officer Stehli prepared a photographic lineup containing defendant's photograph. He showed Henry the six-pack photographic lineup and Henry identified defendant. Mary also identified defendant from the six-pack photographic lineup.

4

Henry could not move one of his fingers since he had been stabbed because a tendon was cut. He had a laceration to his liver from defendant stabbing him in the abdomen; it was a significant injury. He was in the hospital for five or six days. He required extensive physical therapy.

Defendant was arrested approximately three hours after the stabbing in an area one mile from the apartment complex. Defendant had a pocket knife. Defendant denied that he was involved in the stabbing. He claimed he was sleeping at the time of the incident. Officer Stehli had the knife and defendant's hands swabbed for DNA.

Hemet Police Officer Bryan Cunningham responded to the stabbing. When he arrived, he was directed to two men who had been seen walking away from the area of the stabbing. One of them had a knife. The man claimed he obtained the knife from a man with tattoos on his face who gave him the knife and then ran off. The knife was swabbed for DNA. Neither of the two men had face tattoos. The swabs from the two knives recovered in the case were not sent to the department of justice for DNA analysis.

2. *DEFENSE*

Defendant testified on his own behalf. In April 2018, defendant was addicted to drugs and was homeless. On April 26, 2018, he had been sleeping in a stairwell and then went to a restaurant to use the restroom. He was walking to the apartment complex where his brother lived, where the stabbing occurred, when a police officer stopped him. The police officer accused him of being under the influence. Defendant was placed in a police car and taken to the police station. At that point, he was accused of the stabbing that occurred at the apartment complex. Defendant denied that he committed the

5

stabbing. Defendant did not know Henry or Mary. Defendant admitted to having prior convictions of felony grand theft in 2008; robbery in 2009; first degree burglary in 2012; and attempted vehicle theft in 2017.

## DISCUSSION

A.      <u>REFUSAL TO GRANT CONTINUANCE TO FILE *ROMERO* MOTION</u>

Defendant contends the trial court abused its discretion by refusing to grant a continuance so he could file a *Romero* motion to dismiss his prior strike convictions. Denial of the continuance deprived defendant of his Sixth Amendment right to defend himself.

### 1.      *ADDITIONAL FACTUAL BACKGROUND*

After the jury entered its verdict on November 15, 2018, the trial court advised defendant regarding sentencing. "Mr. Moss, you have a right to be sentenced within 20 days of the time that we have the trial on your priors. And some people like to have a few days to have their investigator put together a package about you that you might want to present as to why you shouldn't get a long sentence or something like that, or for you to be able to get together in your mind or in writing or whatever why you think that a long sentence wouldn't be appropriate. [¶] So generally what people do—but it's your choice—is that they waive time for sentencing for six weeks while the probation department is getting together a recommendation. It takes them about six weeks. You don't have to do that. It's up to you." The trial court advised defendant the priors trial would occur the following Monday and defendant would have to decide if he wanted to

continue sentencing "in order to be able to put together, . . . , an argument or something that you want your investigator to present at the actual sentencing."

The court trial on the prior convictions was conducted on November 19, 2018. The prior convictions were found true. The trial court advised defendant that the probation department would be generating its report over the following 20 days. The trial court wanted to extend the period to 30 days if defendant would waive time for sentencing. Defendant responded to any proposed increase over the 20 days by stating, "Well, I kind of want to get this over with." He did not want to waive time. The parties agreed to an extension to December 19, 2018. The trial court advised defendant that he could prepare something on his own behalf.

On December 19, 2018, the trial court advised defendant that he should have counsel for sentencing but defendant wanted to continue to represent himself. The prosecutor also advised the trial court that defendant had another pending felony case for vehicle burglary. He also had a pending misdemeanor case and probation violations. The prosecutor requested a continuance and defendant agreed to waive time until January 4, 2019.

The sentencing occurred on January 4, 2019. The trial court noted that defendant had an extensive criminal history and that he was only 26 years old. Defendant responded that he was innocent and was not the assailant. Further, the crime involved was only an assault. The trial court noted that the reason that he was facing a life sentence was because of his extensive criminal history. Defendant responded that most of his criminal history was from when he was a juvenile.

The prosecutor responded, "You honor, based on the facts of this case and the allegations and the two strike priors with no *Romero* pending, the Court has to impose 25 to life." The prosecutor stated, "His record does not indicate somebody who should be given any sort of break in this case. He's been in and out of prison, violations of parole, committing crimes since he was a juvenile. He hasn't learned from that. This is a 25-to-life case."

Defendant responded, "If I filed a *Romero*, would I get less? Because you said there was no *Romero* pending." The trial court asked defendant if he had filed a *Romero* motion. Defendant stated, "No, I didn't know that I should. I believe I was innocent. So I didn't see the need. *Romero* means that you have [to] admit guilt. You have to admit to something. I fought the case all the way through."

The following exchange occurred:

"The Court: Well, the *Romero* motion basically is to have one of the prior strikes stricken. Not the present case. But it has to do with—

"Defendant Moss: On the seven-year-case—on the seven-year case, I did get the *Romero* act. And they struck the previous act, so they—so I only had one.

"The Court: Well, the information that is contained in the system is that you might have gotten a disposition that did not count both of them. But it didn't make it go away. If you had never completed another crime, fine—

"Defendant Moss: Yeah, that's what my lawyer told me. If you ever got another strike, you would only have two, versus three.

"The Court: That's not what's indicated by the records.

8

"Defendant Moss:  Yeah.

"The Court:  So I have not received a *Romero* motion.

"Defendant Moss:  Should I file one?  Could I still file one?"

The trial court informed defendant that it could not advise him whether to file a *Romero* motion and that it was the day for sentencing.  The trial court advised defendant that he should have filed the *Romero* motion "quite a while ago."  The prosecutor objected to any continuance in order for defendant to file a *Romero* motion.  The prosecutor also argued that even if defendant were allowed to file a *Romero* motion that it would be an abuse of the trial court's discretion to grant the motion because he "falls directly inside the three strikes law."

The trial court noted "Well it's hard to make that determination for the Court until I've heard both sides.  I understand what you're saying from your standpoint, but the—you know, before the Court could make that kind of a decision, I'd have to hear from everybody.  But I'm going to find that it is untimely too—we're here for sentencing for the second time."  The trial court noted that it had "bent over backwards" for the defendant in order to convince him to get an attorney for sentencing.  The trial court concluded, "And I would say that as the defendant stated, he has a criminal history that goes back to his very young age.  And has continued without stop.  I don't see any period of time where there was a break, except when he was in custody.  And the crimes have been—some of them serious.  Some of them not serious.  But basically no significant time without criminality.  So anyway—anything further from either side?"  Neither party had any further argument.

2.    *ANALYSIS*

A continuance in a criminal case may be granted only for good cause.  (§ 1050,
subd. (e).)  Section 1050, subdivision (b) provides, "To continue any hearing in a
criminal proceeding, including the trial, (1) a written notice shall be filed and served on
all parties to the proceeding at least two court days before the hearing sought to be
continued, together with affidavits or declarations detailing specific facts showing that a
continuance is necessary."  A party can make an oral request for a continuance.  (§ 1050,
subd. (c).)  "When a party makes a motion for a continuance without complying with the
requirements of subdivision (b), the court shall hold a hearing on whether there is good
cause for the failure to comply with those requirements.  At the conclusion of the hearing,
the court shall make a finding whether good cause has been shown."  (§ 1050, subd. (d).)

"Whether good cause exists is a question for the trial court's discretion.
[Citation.] . . . While a showing of good cause requires that both counsel and the
defendant demonstrate they have prepared for trial with due diligence [citation], the trial
court may not exercise its discretion 'so as to deprive the defendant or his attorney of a
reasonable opportunity to prepare.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)
"Absent a showing of an abuse of discretion and prejudice, the trial court's denial does
not warrant reversal." (*Doolin*, at p. 450; see also *People v. Mungia* (2008) 44 Cal.4th
1101, 1118.)  "In reviewing the decision to deny a continuance, '[o]ne factor to consider
is whether a continuance would be useful.' " (*Mungia,* at p. 1118.)

Here, the trial court denied the continuance because it found that defendant had
ample time to file the *Romero* motion before the sentencing hearing.  It was clear that

10

defendant was aware that he could file such motion. Defendant noted that in his prior case, there had been a *Romero* motion. In addition, the trial court had advised defendant that he could use the time before sentencing to meet with his investigator to prepare something to argue that he should not be subject to a lengthy prison sentence. It was clear that defendant prepared nothing, despite being given time to do so. Defendant, in propria persona, was held to the same standard as counsel. "Self-represented defendants are 'held to the same standard of knowledge of law and procedure as is an attorney.' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1000.) The trial court did not abuse its discretion by denying defendant's request for more time to file a *Romero* motion, as he had ample time to file the motion.

Further, defendant was not deprived of his right to present a defense in violation of his Sixth Amendment rights. Defendant was given ample opportunity to file a *Romero* motion and chose not to do so. The trial court would have entertained such a motion if it had been timely filed. The court was willing to extend the time for defendant to prepare for sentencing but defendant told the trial court he just wanted "to get this over with." Defendant's Sixth Amendment rights were not violated.

Even had the trial court entertained defendant's *Romero* motion, there is no reasonable probability that defendant would have received a more favorable outcome. (*People v. Mungia*, *supra*, 44 Cal.4th at p. 1118-1119.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider

11

whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

As noted by the trial court, defendant had an extensive criminal record despite being only 26 years old. At the time of sentencing, defendant had pending felony and misdemeanor cases. He was also facing probation violations. Defendant began committing crimes in 2000, when he was only 10 years old. He committed numerous theft and drug offenses as a juvenile. He committed a robbery offense in 2009 and was found unfit for juvenile court; he was sentenced to state prison for two years. Once he attained adulthood, he continued to commit offenses including a burglary, for which he was sentenced to seven years in prison. Once released, he violated his probation on numerous occasions and continued to commit crimes.

The trial court did not abuse its discretion or violate defendant's right to defend himself by finding there was no good cause to grant the continuance. Defendant had two months during which to file the *Romero* motion and the record supports that he intentionally decided not to file the motion. Moreover, even if the trial court granted a continuance to defendant in order for him to file a *Romero* motion, it is not clear from the record that defendant would have actually filed such motion based on his comments to the trial court. Finally, defendant clearly fell within the spirit of the Three Strikes law and it is not reasonably probable he would have received a more favorable outcome had

he been given the opportunity to file the *Romero* motion.  (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)  Defendant has failed to show that the trial court abused its discretion by denying a continuance or that he was deprived of his right to present a defense.

B.    SECTION 667.5, SUBDIVISION (B), PRIORS

Defendant contends this court should strike the two section 667.5, subdivision (b), enhancements imposed for his prior prison terms.  The People concede that they must be stricken.

On October 8, 2019, Senate Bill No. 136 was signed into law and became effective on January 1, 2020.  Senate Bill No. 136 modifies section 667.5, subdivision (b), to eliminate the one-year sentences for prior prison terms served unless the prior prison term involves a conviction of a sexually violent offense (which is not involved here).  Senate Bill No. 136 applies retroactively to those defendants whose cases are not yet final.  (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738-739; People *v. Lopez* (2019) 42 Cal.App.5th 337, 341-342.)  Defendant's case is not yet final, and as conceded by the People, the two section 667.5, subdivision (b), enhancements for his two prior prison sentences should be stricken.  We will direct the trial court to strike the prior prison terms imposed pursuant to section 667.5, subdivision (b).

C.    STRIKE ENHANCEMENTS ORDERED TO RUN CONCURRENT

Defendant contends the trial court improperly imposed concurrent sentences on the great bodily injury enhancement found true pursuant to section 12022.7, subdivision (a); the two prior serious felony convictions found true pursuant to section 667, subdivision (a); and the two, one-year enhancements imposed for having served two prior

13

prison terms found true pursuant to 667.5, subdivision (b). Defendant contends that the trial court could only strike or impose the enhancements consecutively. This court should strike the enhancements as the trial court clearly did not intend to impose these enhancements. We have already struck the two, one-year enhancements imposed pursuant to section 667.5, subdivision (b). The People agree that the sentences on the remaining enhancements could not be ordered to run concurrently and that this court can strike the sentence on the enhancements as it was clear that the trial court did not intend to impose the enhancements; remand would be a waste of judicial resources.

At the time of sentencing, the prosecutor agreed that a 25-years-to-life sentence was appropriate in the case. The prosecutor recommended staying the sentences on the enhancements. The trial court believed that 25-years-to-life was a sufficient sentence even though the probation department had recommended imposing 13 years on the enhancements. The trial court ordered the 13 years to run concurrent to the 25-years-to-life sentence.

Section 12022.7, subdivision (a), provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." A trial court has the discretion to strike the enhancement or additional punishment for an enhancement pursuant to section 1385,

14

subdivision (b)(1).**4** (*People v. Jones* (2007) 157 Cal.App.4th 1373, 1378-1383; *People v. Rivas* (2004) 119 Cal.App.4th 565, 571.) If the trial court chooses to impose the sentence on the enhancement, it must impose a consecutive sentence. (§ 1170.1, subd. (d).)

At the time that defendant was sentenced on January 4, 2019, Senate Bill No. 1393 had been effective for four days. (Sen. Bill No. 1393 (2017-2018 Reg. Sess.).) The bill amended sections 667, subdivision (a)(1), and 1385, subdivision (b), to allow a court to exercise its discretion to strike or to dismiss a serious felony prior for sentencing purposes. (*People v. Alexander* (2020) 45 Cal.App.5th 341, 344.) Prior to the amendment, the trial court did not have the discretion to strike a section 667, subdivision (a)(1), enhancement. As such, the trial court had the discretion to strike the section 667, subdivision (a)(1), priors at the time of sentencing but not run them concurrent to the imposed sentence. (§ 1170.1, subd. (d).)

When there is an error in sentencing, "Remand is required unless 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] enhancement' even if it had the discretion. [Citation.] In reviewing whether the trial court made such an unequivocal indication, we consider the trial court's statements and sentencing decisions." (*People v. Franks* (2019)

---

**4** Section 1385, subdivision (b)(1), provides, "If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice."

35 Cal.App.5th 883, 892.) Conversely, if the trial court clearly indicates it would have stricken the enhancements, remand is not required.

Here, the trial court expressed that a 25-years-to-life sentence was the appropriate sentence. It did not agree with the probation report that an additional 13-year determinate term should be imposed on the enhancements.

The trial court could have imposed the enhancements but decided that it did not want to sentence defendant to the additional 13 years. It then improperly sentenced defendant concurrently on these enhancements. As conceded by the People, this court should strike the sentence on the great bodily injury enhancement and the serious prior felony enhancements pursuant to section 1385.

D.     ABILITY TO PAY

Defendant claims, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), that the trial court violated his federal constitutional right to due process by imposing the restitution fine and fees without determining if he had the ability to pay. Defendant contends this court must reverse the imposition of the fines and fees. The People contend defendant has forfeited any objection to the restitution fine; the restitution fine is a form of punishment and it is properly examined under the excessive fines clause of the Eighth Amendment not requiring an ability to pay determination; and any conceivable error was harmless beyond a reasonable doubt. The California Supreme Court will ultimately decide these issues as it has granted review in *People v. Kopp*, review granted on November 13, 2019, S257844, but we conclude remand is not necessary.

16

In the probation report, it was recommended that the trial court impose a $10,000 restitution fine pursuant to Penal Code section 1202.4, subdivision (b); a $10,000 parole revocation fine which would be stayed pursuant to Penal Code section 1202.45; a booking fee of $514.58 pursuant to Government Code section 29550; a criminal conviction assessment fee of $30 pursuant to Government Code section 70373; the yet-to-be-determined cost of the presentence report pursuant to Penal Code section 1203.1b; a court operations assessment fee in the amount of $40 pursuant to Penal Code section 1465.8, subdivision (a)(1); and $1,500 for presentence incarceration costs pursuant to Penal Code section 1203.1c. The trial court imposed these fines and fees at sentencing and made no determination as to defendant's ability to pay.

On January 8, 2019, after sentencing in this case, the Court of Appeal issued its opinion in *Dueñas*, *supra*, 30 Cal.App.5th 1157. In *Dueñas*, the defendant was a probationer who suffered from cerebral palsy, was indigent, homeless, and the mother of young children. She requested and received a full hearing on her ability to pay the court facilities fee, court operations fee, and the mandatory minimum restitution fine. Despite her clear inability to pay these fees and fine, the trial court mandatorily imposed them. (*Id.* at pp. 1162-1163.)

The Court of Appeal held that the trial court violated defendant's right to due process under both the United States and California Constitutions by imposing court operations and facilities assessments pursuant to Government Code section 70373 and Penal Code section 1465.8, without making a determination as to the defendant's ability to pay even though such determination was not required by the statute. (*Dueñas*, *supra*,

17

30 Cal.App.5th at p. 1168.) Further, the court concluded that although the imposition of restitution fines pursuant to Penal Code section 1202.4, subdivision (b), is punishment, unlike the above fees, it raises similar constitutional concerns, and therefore, the *Duenas* court held that while the trial court must impose the minimum restitution fine even if the defendant demonstrates an inability to pay, "the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas,* at p. 1172.)

1.      *WAIVER*

We first address the booking fee imposed pursuant to Government Code section 29550. Government Code sections 29550 and 29550.2 permit judicial consideration of the defendant's ability to pay. As such, it differs from the fines and fees discussed in *Dueñas.* The California Supreme Court has already determined that the failure to challenge the imposition of a booking fee at sentencing forfeits the claim on appeal. (*People v. McCullough* (2013) 56 Cal.4th 589, 592-593, 598.) Defendant has forfeited any objection to the imposition of the booking fee due to the trial court's failure to determine his ability to pay.

In addition, defendant relies on *Duenas* to contend that the presentence report fee (an amount that has not been determined) imposed pursuant to section 1203.1b should have not been imposed without first determining his ability to pay the fees. These also differ from the fees discussed in *Dueñas* as they already have a requirement that a determination must be made as to the defendant's ability to pay the fees. Defendant has also waived any objection to these fees. The California Supreme Court has repeatedly

18

found that the failure to object to these fees forfeits the argument of an inability to pay on appeal. (*People v. Aguilar* (2015) 60 Cal.4th 862, 866; *People v. Trujillo* (2015) 60 Cal.4th 850, 857-858.)[5]

Defendant also states that the section 1203.1c incarceration costs should be stricken based on his inability to pay. We note that such fee could not be imposed because defendant was sentenced to state prison. Section 1203.1c provides in relevant part that if "a defendant is convicted of an offense and is ordered to serve a period of confinement in a county jail, city jail, or other local detention facility as a term of probation or a conditional sentence," the court may order the defendant to pay "the reasonable costs of such incarceration, including incarceration pending disposition of the case." Since defendant was sentenced to state prison, section 1203.1c does not apply. Despite defendant not raising the issue that the imposition of the fee was unauthorized, we can strike the fee for the first time on appeal. (*People v. Smith* (2001) 24 Cal.4th 849, 854 [reviewing courts can strike unauthorized sentence at any time].)

Further, defendant has waived any objection to the restitution fine imposed. The restitution fine imposed was in the amount of $10,000. This court has already concluded that prior to *Dueñas*, the trial court in imposing a restitution fine above the minimum

---

[5] It appears defendant is not without recourse to have these amounts reduced. Section 1203.1b, subdivision (f), provides, "At any time during the pendency of the judgment rendered according to the terms of this section, a defendant against whom a judgment has been rendered may petition the probation officer for a review of the defendant's financial ability to pay or the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to defendant's ability to pay the judgment."

statutory amount ($300) already had the obligation to determine the defendant's ability to pay the enhanced restitution fine. The defendant's failure to object to the imposition of a restitution fine in excess of the statutory minimum waives the issue of ability to pay on appeal. (*People v. Taylor* (2019) 43 Cal.App.5th 390, 399-400) Defendant has waived his claims of a violation of due process on the restitution fine, the presentence incarceration fee, the booking fee and any fee imposed for the presentence report.

### 2. COURT FACILITY AND OPERATION FEES

As for the remaining fees, Government Code section 70373 and Penal Code section 1465.8, subdivision (a)(1), do not include language regarding the defendant's ability to pay the fees. We need not determine whether *Dueñas* was properly decided as to these fees imposed. Even if *Dueñas* applies to this case, the record supports defendant has the ability to pay based on his prison wages, rendering any conceivable constitutional error harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [defendant has ability to pay assessments and fines though prison wages].) "Prison wages range from $12 to $56 per month, depending on the prisoner's skill level." (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.) "The state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine." (*Ibid.*) Defendant, who has received a sentence of 25 years to life, can earn wages in prison to pay the $70 of fees imposed even if half of his wages would go to paying the restitution fine. Defendant was 26 years old and there was no evidence that he was incapable of working in prison. We find that even if *Dueñas* was properly decided, any conceivable constitutional error was harmless.

20

# DISPOSITION

The trial court is directed to strike the two one-year enhancements pursuant to section 667.5, subdivision (b); the two prior serious felony conviction enhancements pursuant to 667, subdivision (a)(1); and the incarceration fee pursuant to section 1203.1c. The concurrent sentence on the section 12022.7, subdivision (a), enhancement must also be stricken. The trial court is ordered to prepare an amended abstract of judgment and to forward it to the appropriate prison authorities. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.


We concur:


CODRINGTON
J.


MENETREZ
J.


21